UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA LYNN VALENTINE,

    Plaintiff,

v.

    Case No. 1:12-cv-392
    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

# OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on August 17, 1957 (AR 242).[1] She alleged a disability onset date of January 25, 2005 (AR 242). Plaintiff graduated from high school and had additional training as a medical assistant (AR 253). She had previous employment as a roll mill operator in a factory and as a dental assistant (AR 248). Plaintiff identified her disabling conditions as: back fusion; degenerative disc disease; and fibromyalgia (AR 247). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 16, 2010 (AR 9-16). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

3

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 25, 2005 and that she met the insured status requirements under the Act through December 31, 2011 (AR 12). Second, the ALJ found that plaintiff has the following severe impairments: lumbar degenerative disc disease, with status post lumbar fusion; fibromyalgia; status post right rotator cuff repair; and obesity (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine) or 11.09 (multiple sclerosis) (AR 14).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), reduced by all of the following: the ability to perform frequent climbing (but only occasionally ladders, ropes & scaffolds), balancing, stooping, kneeling, & crouching; and the ability to perform only occasional crawling.

(AR 15).

The ALJ found that plaintiff was capable of performing her past relevant work as a roll mill operator or a hair stylist (AR 19). The ALJ also found that this work does not require the performance of work related activities precluded by plaintiff's residual functional capacity (RFC) (AR 19). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined

4

in the Social Security Act, from January 25, 2005 (the alleged onset date) through December 7, 2010 (the date of the decision) (AR 19-20).

### III. ANALYSIS

Plaintiff raised four issues on appeal:

**A.   The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physicians.**

Plaintiff contends that the ALJ failed to properly consider the opinions of Kathy Watts, who is both a nurse practitioner (NP) and a psychologist (Ph.D.)[2], David B. Peirce, M.D. and Mark Moulton, M.D.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

---

[2] In addition to her education as a nurse, Watts testified that she earned a Ph.D. in psychology in 1999 and is licensed to practice psychology in Michigan (AR 751-52).

5

medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Kathy Watt, NP, Ph.D.

On February 8, 2010, Watt completed both a "Medical provider's assessment of patient's ability to do physical work-related activities" and a "Medical provider's assessment of ability to do mental work-related activities" (AR 634-40). The ALJ evaluated Watt's opinions as follows:

6

> As for the opinion evidence, the claimant's treating physicians and health care providers (such as a nurse practitioner) have indicated their opinion that the claimant is totally disabled, in that she needs to recline for a portion of the normal workday. The claimant's nurse practitioner, Kathy Watt, N.P., completed a written form assessing the claimant's ability to do physical work-related activities. In that assessment, the nurse practitioner assigned significant work limitations to the claimant's abilities, which if accurate, would certainly preclude the performance of sustained work (Exhibit 11F) [FN 3] However, not only do those assigned limitations conflict with the progress notes of the claimant's physical examinations, it does not reflect a considered assessment based upon the nurse practitioner's professional training. Ms. Watt admitted during her deposition that the written assessment simply reflected the claimant's own responses to Ms. Watt "outright asking [the claimant] what she felt she was capable of" (Exhibit 18F, Page 18). Thus, the undersigned places little weight on the assessment of the nurse practitioner.
>
> > [FN 3 It is noted that a nurse practitioner is considered a medical source, other than an "acceptable medical source" as set forth in the regulations (20 CFR 404.1 513(a) & (d)), whose opinion must be weighed using the factors of 20 CFR 404. 1527(d).]

(AR 16).

As the ALJ properly noted, Ms. Watt's opinions expressed in the physical assessment are not given controlling weight because she expressed those opinions in her capacity as a nurse practitioner rather than a treating physician under the regulations. NP Watt's opinions with respect to plaintiff's physical impairments are not entitled the weight given to the opinion of an "acceptable medical source" such as a licensed physician. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). However, her opinions can be considered as evidence from an "other" medical source. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's

7

assistants, naturopaths, chiropractors, audiologists and therapists). As discussed, the ALJ properly considered her opinion on the physical assessment as one given by an "other" medical source.

The ALJ, however, did not address Watt's opinion in her capacity as a licensed psychologist. As such, Dr. Watt was an acceptable medical provider under 20 C.F.R. §§ 404.1513(a) and 416.913(a), whose opinion was entitled to controlling weight with respect to plaintiff's mental condition. While Dr. Watt signed the mental assessment as an "NP" rather than a"Ph.D.", the ALJ had reviewed her statement and would have been aware of her status as a licensed psychologist (AR 16). In her statement, Dr. Watt observed that plaintiff was diagnosed with depression and anxiety as early as 2003 (AR 754-55). Her symptoms included overall fatigue, low self-esteem, crying, hopelessness and a sense of futility and was treated with multiple antidepressants (AR 755). Based on these symptoms, Dr. Watts stated that plaintiff had a marked limitation to maintain attention/concentration, moderate limitations in her ability to deal with work stresses and understand, remember and carry out even simple job instructions, and moderate functional limitations in her activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace (AR 638-40).

The ALJ, citing no specific medical record, concluded that plaintiff's medically determinable impairments of dysthymic disorder and history of drug and alcohol abuse, currently in remission, caused only a minimal limitation in plaintiff's ability to perform basic mental work activities and were not severe impairments (AR 13-14). The ALJ presumably relied on the opinions of consulting and non-examining psychologists to reach this result. The diagnoses appear in the report of a consulting psychologist performed on April 7, 2009 (AR 410-16) and the determination that plaintiff had only mild limitations in her activities of daily living, maintaining social functioning

8

and maintaining concentration, persistence or pace is apparently based upon the "B" Criteria in a Psychiatric Review Technique form (PRTF) prepared by a non-examining psychologist on May 1, 2009 (AR 435).

Dr. Watt's conclusions that plaintiff's mental condition resulted in moderate limitations and the ability to follow only simple directions are contrary to the ALJ's determination that plaintiff's mental impairments were so mild as not to even qualify as severe impairments. The ALJ should have reviewed Dr. Watt's opinions with respect to plaintiff's mental assessment as those of an acceptable medical source entitled to great weight. Under these circumstances, the ALJ has not articulated good reasons for rejecting the opinions of Dr. Watt's with respect to plaintiff's mental impairments. *Wilson*, 378 F.3d at 545. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate plaintiff's mental condition, including opinions issued by Dr. Watts in her capacity as a licensed psychologist.

### 2. Dr. Peirce

Plaintiff summarized Dr. Peirce's opinions in pertinent part as follows:

> Dr. Peirce completed an RFC assessment on March 18, 2010 (641). He thought her abilities to sit, stand or walk were limited to 5 to 15 minutes of time, furthermore, he thought she could only sit or stand for two hours apiece during the workday and walk for three to four — she had to change positions at least every 15 minutes (642). He thought she could only occasionally lift up to ten pounds and could never lift amounts over that level (642). The doctor also observed that Plaintiff could never stoop, reach above her right shoulder, squat, kneel or climb ladders, crouch or crawl (643). In addition, he limited her to only occasional hand use in all areas and thought she could never operate hand controls (643- 644). He imposed a number of other environmental restrictions (644). He noted she had limitations in her ability to see due to her MS (645). He observed that her symptoms were compatible with her diagnoses of a right rotator cuff injury and MS, and he considered her to be severely impaired and totally disabled (645).

9

Plaintiff's Brief at pp. 5-6. Dr. Peirce provided additional information in supplemental deposition testimony given on July 13, 2010 (AR 176-90). In this testimony, Dr. Peirce stated that he had treated plaintiff since February 4, 2010 and that he agreed with the restrictions as set forth in the March 18, 2010 form (AR 179). Dr. Peirce also testified that plaintiff was unable to work due to her diagnoses of overwhelming fatigue and chronic pain (AR 181-83). *See* Plaintiff's Reply Brief at pp. 3-4.

The ALJ addressed Dr. Peirce's opinions as follows:

> Similarly, Dr. David Peirce completed a form on March 18, 2010, regarding the claimant's functional restrictions (Exhibits 12F & 13F). Likewise, he indicated that the form was completed in consultation with the claimant, inasmuch as she was a new patient and he had few records regarding her condition (Exhibit 13F, Page 7). Again, this assessment is inconsistent with the bulk of the medical records reflecting the claimant's physical examinations and little weight is placed thereon.

(AR 17). The ALJ's summary dismissal of Dr. Peirce's March 18, 2010 opinion did not take into account the doctor's subsequent testimony which set forth additional bases for that opinion. Under these circumstances, the ALJ's summary rejection of Dr. Peirce's March 18, 2010 opinions are not supported by substantial evidence. This matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), and on remand, the Commissioner should re-evaluate all of the evidence presented by Dr. Peirce.

### 3. Dr. Moulton

In a form letter "to whom it may concern" dated December 29, 2009, Dr. Moulton stated that plaintiff had a "total disability" and that her next appointment date was "due in April 2010" (AR 745). The doctor later gave testimony in a deposition dated August 3, 2010 (AR 770-86). Plaintiff summarized that testimony as follows:

On August 3, 2010, Dr. Moulton was deposed in this case; he had been treating Plaintiff since September of 2005 (773-775). He noted that she had been referred to him after conservative treatment for her spine had failed, and while he had performed spinal fusion surgery upon her, she still experienced significant back pain and some radicular symptoms thereafter (776). He noted that because she had not had a great result with her back surgery, he was hesitant to recommend surgery for the problems with her cervical spine (777). He believed that Plaintiff had MS [multiple sclerosis] and observed that there was some plaque formation in side her spinal column, which he said would cause pain and numbness as well as other issues (778). The doctor noted that she also had fibromyalgia and that she had undergone surgery on her AC joint and her rotator cuff (779). He observed that her depression was part of her complex of her multiple issues (780). With regard to her ability to work, he thought she could not even perform sedentary work because he did not think she perform 20 hours a week of employment because of her need to lie down throughout the day (780-781). He further observed that most people with active MS were disabled due to progressive weakness and fatigue and other symptoms (784).

Plaintiff's Brief at pp. 9-10.

The ALJ addressed Dr. Moulton's opinions as follows:

Another of the claimant's treating physicians, Mark Moulton, M.D., indicated his opinion that the claimant is "totally disabled" (Exhibit 17F) [AR 745]. The Commissioner is responsible for making the determination or decision about whether an individual meets the statutory definition of disability. Therefore, an Administrative Law Judge is not bound by a statement by a medical source that an individual is "disabled" or "unable to work." Accordingly, the undersigned rejects Dr. Moulton's opinion that the claimant is disabled, insofar as it relates to the ultimate finding of disability. (20 CFR 404. 1527(e)(1) and SSR 96-5p).

During his deposition, Dr. Moulton indicated that, with regard to her back, the claimant's condition and symptoms had actually improved since her back surgery. He also indicated that he does not know what is causing her continued radicular pain complaints, since there is no evidence of any stenosis. Despite her complaints over the years, Dr.Moulton thought the claimant should be able to return to her past work, and in fact encouraged her to do so, but based on the claimant's expressed symptoms, she is apparently unable to sustain work for a 40 hour week (Exhibit 19F). Yet, the undersigned finds that this assessment is also inconsistent with the medical evidence as a whole, and little weight is placed thereon.

(AR 17).

As an initial matter, the ALJ properly rejected Dr. Moulton's cursory statement that plaintiff was "totally disabled." Although Dr. Moulton was a treating physician, the ALJ was not

11

bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

With respect to Dr. Moulton's deposition testimony, the Court concludes that the ALJ gave good reasons for giving that opinion little weight. Dr. Moulton apparently felt that plaintiff could perform her past relevant work when he encouraged plaintiff to return to her job and suggested that she could perform light sedentary work (AR 780-81). Ultimately, the doctor stated that plaintiff could not work either 20 or 40 hours per week because "she needs to lie down throughout the day" (AR 781). However, the doctor provided no testimony to support this limitation. The doctor also relied on plaintiff's claim of MS as a basis for his conclusions (e.g., the doctor stated that "[m]ost people with active MS are disabled") (AR 784). As discussed in § III.B., *infra*, this reliance was not supported by the medical evidence, because a specialist could not find sufficient evidence that plaintiff suffered from MS. Accordingly, plaintiff's claim of error with respect to Dr. Moulton will be denied.

**B. The ALJ did not have substantial evidence to support his finding that plaintiff did not have a severe mental impairment or a severe impairment (whether it was multiple sclerosis or a different impairment).**

Plaintiff also contends that she suffered from a severe mental impairment and a severe impairment of MS. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.*

Here, the ALJ found that plaintiff suffered from severe impairments of lumbar degenerative disc disease, with status post lumbar fusion; fibromyalgia; status post right rotator cuff repair; and obesity (AR 12). The Court addressed the ALJ's evaluation of plaintiff's mental impairments in § III.A.1, *supra*. With respect to plaintiff's claim of MS, the ALJ found that plaintiff's diagnosis "has never been confirmed due to inconclusive evidence" of MS (AR 13). The ALJ's determination is supported by the April 16, 2010 opinion of treating physician Dennis A. Jewett, M.D., Medical Director, Bronson Neurodiagnostics, who stated that "I do not believe there is sufficient evidence of MS to justify treatment in this case" (AR 683). Thus, the ALJ did not err in failing to find that plaintiff suffered from the severe impairment of multiple sclerosis.

13

### C. The ALJ committed reversible error by using impermissible "boilerplate" language in describing plaintiff's residual functional capacity.

Plaintiff contends that the ALJ used "meaningless" boilerplate language to evaluate his credibility, when he stated that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity set forth above, in finding number 5.

(AR 15). Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

While the Seventh Circuit noted that "we first stubbed our toe" on this "opaque boilerplate," *id.* at 644, the court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Assuming that this Court agreed with the Seventh Circuit's characterization of the Commissioner's boilerplate language, the ALJ's use of the language is not, in and of itself, grounds for reversal. Accordingly, plaintiff's claim of error is denied.

**D. The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.**

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. §§ 404.1565 and 416.965.

A vocational expert's (VE's) testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Services*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However,

the ALJ may use a VE's services in determining whether a claimant can perform his past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

When the court obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, the ALJ relied on the VE's testimony that a hypothetical person with plaintiff's RFC could perform her past relevant work as both a roll mill operator (medium work) and a hair stylist (light work) (AR 15, 64-66). The VE also testified that if the hypothetical person was limited to light work, then that person could still perform plaintiff's past relevant work as a hair stylist (AR 65). However, the VE further testified that if the hypothetical person was limited to only sedentary work, then the person could not perform any of plaintiff's past relevant work (AR 65-66).

The ALJ's hypothetical question appears based in part on the May 6, 2009 opinion of a non-examining state physician who reviewed plaintiff's medical records:

> [G]reat weight is placed on the assessment of the State agency physician, Robert Nelson, M.D., who reviewed the record as it then existed and completed a written physical residual functional capacity assessment form. It was Dr. Nelson's medical opinion that the claimant should be capable of lifting or carrying up to 50 pounds occasionally and up to 25 pounds frequently; with the ability to sit for about 6 hours of an 8 hour workday; stand and/or walk for about 6 hours of the day, with normal breaks; perform frequent climbing of ramps and stairs (occasional climbing of ladders, ropes, or scaffolds), balancing, stooping, kneeling, and crouching; and perform occasional crawling, with no other limitations (Exhibit 5F). Such state agency medical examiners are recognized as highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act. While Administrative Law Judges are not bound by the findings made by the state agency or other program physicians and psychologists, neither may they ignore these opinions (Social Security Ruling 96-6p). The undersigned has considered the evidence of record as a whole and finds that state agency examiners' assessment of the claimant's residual functional capacity is well supported and is not inconsistent with the medical evidence as a whole.

(AR 17, 417-24).

Plaintiff takes issue with the ALJ's determination that a hypothetical person, who was a 53-year-old female with a previous lumbar fusion could perform medium work (i.e., work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds) such as her past relevant work as a roll mill operator. Plaintiff, however, does not cite any authority in support of her claim. The ALJ relied on the opinion of Dr. Nelson, who determined that plaintiff could perform medium work taking into account both plaintiff's age and her history of back fusion (AR 424). An ALJ may rely on the opinions of the state agency physicians such as Dr. Nelson who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). This claim of error will be denied.

**IV. CONCLUSION**

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate (1) plaintiff's mental condition, including opinions issued by Dr. Watts in her capacity as a licensed psychologist and (2) all of the evidence presented by Dr. Peirce. A judgment consistent with this opinion shall be issued forthwith.


Dated: September 20, 2013                     /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge